FILED & JUDGMENT ENTERED
Steven T. Salata

Mar 11 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **BRUCE HOWARD MARKO** and | ) | Case No. 11-31287 |
| **JERI ELIZABETH MARKO** | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |

## ORDER

**BEFORE THIS** Court are the following matters:

1) The Chapter 7 Trustee's Amended Motion to Sell Real Estate Outside of the Ordinary Course of Business Free and Clear of Liens and Interests, filed December 26, 2013 ("Motion to Sell"), and David Reule's objection thereto, and

2) The Chapter 7 Trustee's Motion for Authority to Abandon Property of the Estate, filed August 15, 2013 ("Motion to Abandon").

Although separately filed, these motions are alternative requests for relief. As described below, the Trustee asks permission to sell property free and clear of liens and interests under §363(f) and (h). If his motion to sell is not approved, the Trustee asks permission to abandon the property. Hearings were held in these matters on January 16, 2014 and February 6, 2014. A. Burton Shuford, Trustee and attorney for the Trustee, appeared at the hearing, as well as Joseph W. Grier, III on behalf of David Reule ("Reule"), R. Keith Johnston on behalf of Myron and Harriet Marko (the "Parents") and David Badger on behalf of the Debtors, Bruce and Jeri Marko.

Upon consideration of the pleadings and facts before it, this Court **DENIES** the Amended

1

Motion to Sell Real Estate Outside of the Ordinary Course of Business Free and Clear of Liens and Interests but **GRANTS** the Trustee's Motion for Authority to Abandon Property of the Estate.

## FACTS AND PROCEDURAL HISTORY

This dispute centers on a lake house located at 3712 Rivergrass Lane, York, South Carolina (the "Property"). The Property is co-owned by the Debtors and the male Debtor's parents, Myron and Harriet Marko (collectively, the "Owners") by joint tenancy. At the petition date, the Property was subject to a secured debt of approximately $1.4 million owed to Bank of the Ozarks (the "Mortgage Debt").

On May 26, 2010, the Property was offered for sale at absolute auction through a South Carolina auction house. Whether all the owners authorized that sale and whether an absolute auction was authorized are open questions. Certainly, Bruce Marko was involved, but his co-owners deny authorizing such a sale. For his part, Bruce disputes the conditions under which the Property was to be sold, meaning the "absolute" nature of the sale.

However, such an auction of the Property was advertised and a purported sale was held. Reule was the successful bidder at that sale. His bid was $650,000, a sum much less than the outstanding mortgage debt. Reule prepared for closing, but the owners failed to appear and then refused to convey title to him. Reule then filed suit against the co-owners, auctioneer and Bank of the Ozarks (the "Bank") on September 27, 2010 in York County, South Carolina state court. His action seeks a variety of relief, including specific performance of his auction contract (the "South Carolina Action").

Adding to the confusion, on February 23, 2011, the Bank commenced a foreclosure action against the Property. At some point in time, the Bank's foreclosure was joined with the South Carolina Action.

On May 13, 2011, the Debtors filed this Chapter 7 bankruptcy case, staying both the foreclosure and the South Carolina action.[1] The respite was brief. By July 29, 2011, the Bank had entered into a Consent Order with the Trustee and the Debtors that permitted the foreclosure to continue. With an outstanding mortgage balance of $1.4 million versus a stated value of only

---

[1] The State Court Action was only stayed as to the Debtors and the Property.

$1.0 million,[2] all agreed there was no equity in the Property to benefit creditors or the Debtors.

Reule took similar steps seeking authority to continue his action in South Carolina state court, but with less success. He asked for relief from stay to continue the State Court Action as against the Debtors but withdrew the motion before it could be heard. *See* David P. Reule's Mot. for Modification of Stay, August 11, 2011, ECF No. 35. *See also* Withdrawal of Mot. For Modification of Stay, August 22, 2011, ECF No. 40. Fifteen months later, he renewed his request by a protective motion seeking relief from the discharge injunction,[3] in order to assert alleged post-discharge claims against the Debtors in the South Carolina Action. The Debtors opposed this motion.

Meanwhile, matters were transpiring in South Carolina among the non-debtor parties. With the Bank free to continue its foreclosure action, the Parents faced not just loss of their equity in the Property, but a potentially large loan deficiency. To cut their losses, the Parents apparently made a loan to Strategic Ventures, LLC ("Strategic Ventures"), an entity owned by another family member. Strategic Ventures then purchased the mortgage debt from the Bank.

With the mortgage debt in friendlier hands, but facing protracted litigation with Reule in the South Carolina Action, the co-owners hit on an alternative. Through the Trustee, they sought to lease the Property to a third party, Elizabeth Weber, for $2,500 per month. Mot. Of Tr. for Auth. to Enter into Lease with Option to Purchase Real Estate Outside of the Ordinary Course of Bus. Free and Clear of Liens and Interests. 1, May 13, 2013, ECF No. 77. They proposed to give Weber an option to purchase the Property for $1.0 million, free and clear of liens and interests, including Reule's specific performance and equitable lien claims. This sum will not clear the $1.4 million secured debt on the property, and the Bankruptcy Code prohibits sales for less than the total amount of lien claims, so a trustee would not normally be interested. *See* 11 U.S.C. § 363(f)(3). However, the co-owners agreed to pay the Trustee to bring the motion, and, should Weber purchase the Property, to pay the bankruptcy estate another $25,000. That motion asserted that Reule's claims were disputed such that the Property could be sold by the Trustee free and clear per 11 U.S.C. § 363(f)(4).

Reule objected to the Trustee's motion. At a hearing held on May 20, 2013, this Court denied the motion. *See* Order Denying Mot., June 4, 2013, ECF No. 84. That ruling was founded

---

[2] The Debtor's ½ interest in the Property was scheduled at $500,000.
[3] The Debtors received a discharge on October 25, 2011.

3

upon a lack of equity in the Property for creditors, the parties' prior agreement to release the Property to foreclosure, and a desire to avoid interfering with the South Carolina court as it wrestled with this complex litigation.

### The Motion to Abandon.

The Trustee then filed the Motion to Abandon, proposing to abandon the estate's interests in the Property, on the basis of a lack of equity and a desire to avoid continuing expense and liability for the same. Again, Reule objected based on his interest in purchasing the Property. He lost interest, however, before the continued hearing and withdrew his objection. *See* Withdrawal of Objection to Tr.'s Mot. for Auth. to Abandon Prop. of the Estate, September 25, 2013, ECF No. 94. The abandonment motion was continued several times, at the parties' request.

### The Motion to Sell.

With this, the Parents sweetened their offer. Weber now wants to purchase the Property from the Trustee for $1.0 million provided she can acquire the property free and clear. The new secured lender, Strategic Ventures, has offered the estate a $75,000 carve-out from its secured portion of the closing proceeds.

The Trustee is amenable and has filed the current motion to sell. He proposes to sell, not just the Debtors' ½ interest in the property, but also the interests of the Parents. The Parents consent, and this part of the sale is founded upon §363(f)(2) and (h). The Trustee also seeks a sale free and clear of liens. Here, he has the consent of Strategic Ventures as required by §363(f)(2). As to Reule's claims, the new motion asserts that Reule's alleged interests in the Property are in "bona fide dispute." Thus, the Trustee maintains that, pursuant to §363(f)(4), he is permitted to sell the Property, including the non-debtors' ownership interests, free and clear of Reule's alleged interests.

Not surprisingly, Reule has objected to the proposed sale. He argues such a sale would deny him the relief he is seeking in the South Carolina Action, namely the right to have the Property deeded to him by specific performance. With no equity in the Property, Reule also maintains that its disposition is a matter for the South Carolina state court. Finally, and relating to its purchase of the mortgage, Reule accuses Strategic Ventures and the Owners of unclean hands.

**DISCUSSION**

The first question presented by the sale motion is whether under §363(f)(4), a trustee may sell not just the Debtors' undivided interests in the Property free and clear of Reule's claims, but also the undivided interests of the two non-debtor co-owners. If so, the question becomes whether, given the ongoing litigation between the parties in South Carolina state court, the total lack of equity in the Property and the relatively minor sums offered the bankruptcy estate, this Court should authorize such a sale.

The answer to the first question is at best a "maybe," and likely a "no." The answer to the practical question is quite clear, but again is "no." Consequently, the Amended Motion to Sell is **DENIED** and the Motion to Abandon is **GRANTED**.

Section 363(b) permits a trustee, after notice and a hearing, to use, sell or lease property of the estate outside the ordinary course of the debtor's business. 11 U.S.C. § 363(b). Section 363(f)(4) provides that "[t]he trustee may sell property ...A trustee may sell property of the estate "free and clear of any interest in such property …if…(4) such interest is in bona fide dispute…"

The Bankruptcy Code does not define the term "bona fide dispute. "Although courts have not agreed on a precise definition of 'bona fide dispute,' it entails some sort of meritorious, existing conflict." *Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 715 (4th Cir. 1993). Thus, courts have found the existence of a "bona fide dispute" for purposes of §363(f)(4) when "there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *In re Daufuskie Island Props., LLC*, 431 B.R. 626 (Bankr. D.S.C. 2010) (citing *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996)).

Here, there is a bona fide dispute as to Reule's alleged interests in the Property. By virtue of his winning auction bid, Reule may have a right under South Carolina law akin to a purchase option, and a right to demand a deed to the Property by specific performance. Restatement (Second) of Contracts § 28 (1981). In the South Carolina Action, the state judge recently denied the Owners' motion for summary judgment—meaning there are genuine trial issues as to these matters. On the other hand, there are reasons to doubt Reule's alleged interest, including the fact that of the four Owners, only Bruce Marko signed the auction agreement. There is the matter of whether the sale was to be absolute or with reservation. There is even a bankruptcy issue of whether Bruce's interest was an executory contract which was rejected by operation of law, as to

5

the Debtors, under § 365(d)(1) because it was not assumed by the bankruptcy estate.

While Reule's interest is in bona fide dispute, there is still a question whether the Trustee can use §363(f)(4) in connection with §363(h) provisions regarding sales of property co-owned with non-debtors to sell the non-debtor co-owners' interests free and clear along with the Debtors'.

There is precious little case authority on this point, and what there is appears to be conflicting. In *In re Gerwer*, the Ninth Circuit held that a trustee could exercise his powers under § 363(f)(4) even when the bona fide dispute was not between the debtor and a lienholder, but between the lienholders on the property, provided that the dispute could indirectly affect the bankruptcy estate. 898 F. 2d 730, 733 (9th Cir. 1990). "'[T]he purpose behind § 363(f)(4) is to allow the sale of estate property free and clear of disputed interests so the liquidation of assets is not unnecessarily delayed while the disputes are being litigated.' " *In re N.J. Affordable Homes Corp.*, No. 05–60442, 2006 WL 2128624, at *10 (Bankr. D.N.J. June 29, 2006) (citations omitted). Admittedly, selling a co-owned asset free and clear of a disputed lien is congruent with that purpose.

However, the Eighth Circuit has cautioned that courts should use the free and clear power with caution—meaning they should carefully consider their jurisdictional limitations—when the bona fide dispute concerns only the rights of third parties *vis a vis* one another and is not a dispute with the debtor. *State of Mo. V. U.S. Bankr. Ct. for E.D. of Ark.*, 647 F.2d 768, 778 (8th Cir. 1981).

Such caution is particularly appropriate in a court of limited jurisdiction and at a time in which the Article I judicial power itself is under scrutiny. See *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 810 (2013). Finally, we must bear in mind the established principle that bankruptcy relief is not afforded to non-debtors. Thus, non-debtors are not to be granted third party discharges in reorganization plans. See 11 U.S.C. § 524(e). See also 4 Collier on Bankruptcy ¶ 524.05 (16th ed. 2013). Liens may not be avoided under §522(f) on tenancy by the entireties property where only one spouse is in bankruptcy. See *Alvarez v. HSBC Bank USA, N.A.*, 7333 F. 3d 136 (4th Cir. 2013).

Here, the proposal is to sell not just the Debtors' interests in the Property free and clear of Reule's claims, but also those of the co-owners. The Parents could not effectuate such a sale under state law. Thus, it is clear that a ruling in favor of the Trustee would, effectively, extend

6

bankruptcy relief to these non-debtor parties.

For all of these reasons, the ability to use §363(f)(4) in conjunction with §363(h) to sell property free of disputed liens on co-owners interests is questionable.

A definitive answer to this question need not be given, for even if the power exists, it should not be exercised upon the facts presented. There is no equity in the Property. The Bankruptcy Code generally contemplates that over encumbered property not be sold. 11 U.S.C. § 363(f)(2). The sale proponents have manufactured $75,000 of equity for the estate via the carve-out. However, even this sum is unlikely to produce an appreciable benefit for unsecured creditors given the aforementioned legal quandaries; the pending litigation in South Carolina; and the parties demonstrated propensities to litigate. To realize these sums, the Trustee will have to engage in protracted and expensive litigation. Even if he prevails, much of what he recovers will be depleted in litigation costs and will not be available to general unsecured creditors.

Finally, a ruling in favor of the Trustee would interfere with and change the course of the South Carolina Action, which is almost at the point of trial. As this Court noted when it denied the motion requesting authority to lease the Property, a single court should decide this case. As Reule points out, with no equity, multiple non-debtor parties, and an action that was originally commenced in, and relates to property in, South Carolina, the state court has the greater interest.

Further, such a sale would eliminate Reule's prospective remedy of specific performance and limit his potential recovery in that action. It should be noted that Reule believes the Property is worth considerably more than the $1.0 proposed sale price.

Finally, a ruling in the Trustee's favor would lead to multiplicity of litigation with appeals in federal court in addition to the ongoing State Court Action. In the interests of judicial economy, this Court elects to defer to the South Carolina court.

7

## **CONCLUSION**

For the foregoing reasons, the Court hereby **DENIES** the Amended Motion to Sell Real Estate Outside of the Ordinary Course of Business Free and Clear of Liens and Interests and **GRANTS** the Trustee's Motion for Authority to Abandon Property of the Estate.

**SO ORDERED**.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and court's seal appear at the top of the Order. | United States Bankruptcy Court |